524-0909 George v. International Travel Network, et al. Obviously, you can see we've lost a member. Justice Moore, I guess once you kind of start thinking about this, realized he needed to refuse himself. So he is obviously not with us at the moment. The matter will be assigned to a third justice. Madam Clerk will get that taken care of. Obviously, whoever that justice may be will then get the brief, be able to read. They will have access to hear our oral arguments today, obviously. And then we'll, you know, talk with us about final dispositions. So with that cleared up, Mr. Dunham, are you ready to proceed? I am, Your Honor. Come on right up to the podium. Okay, thank you. Mr. Cox, may it please the Court, my name is Daryl Dunham. I'm representing, he goes by Justin as his given name, but he goes by Wyatt. I represent Wyatt George. I think what happened is back in July of 2022, Wyatt wanted to go to Uganda in Africa. He's a pastor. In fact, for a while there, many years, he was the pastor of the church where Judge Moore attended. So that's why I'm sure he's recusing himself. And he bought some tickets through the Defendant Travel Agency. And we're going to get into that transaction, I'm sure, in much greater detail. But he arrived at the JFK Airport. Kenya Airlines would not let him board the plane because he didn't have a visa. And so then transpired a number of communications between he and the Defendant Travel Agency that was not able to be resolved. Hence, we brought this lawsuit. So we filed our complaint and we alleged three different theories as to why it is that the we were met with a motion to dismiss. The motion to dismiss essentially attached standard form fine print contract, which, among other things, had provision in there that had an arbitration clause or the alternative of a limitation to bringing your suit in small claims court. And we, I thought that was going to be a pretty easy motion to dispense with, because we filed an affidavit, counter affidavit, basically saying, look, the time we bought the tickets, we did get some information back from the defendant. And if you look at the information that we got at the time, there isn't any arbitration clause in there. There's no form of damage limitation clause. And so obviously, the defendant had a right to say, well, yes, there was. But there's a factual issue. And so therefore, we should be allowed to proceed to trial. I should point out. Is there an issue with an arbitration clause? That's not how arbitration works. You don't get to go to trial just because there's a factual issue with an arbitration clause, Mr. Dunn. Well. The question becomes first whether the arbitration clause is enforceable. And that is correct, Your Honor. And one of the things that I did consider raising was whether the arbitration clause was procedurally enforceable or substantively enforceable. And I did not choose to go through that line of argument, because at the time the contract was formed, the documents that they are attaching to their motion to dismiss, we consent, we believe there's a factual issue with it. That is the contract. And that's why we think that the 2619 motion was improvidently granted. Well, who gets to decide that issue when there's an arbitration agreement? Well, that's a pretty good question, Your Honor. And I do think that, and it's not any either brief, but I do think that the trial judge could have taken the motion under, could have made his own fact finding if he had chosen to do that and make a conclusion as to whether or not my client really did bind himself to that clause at the time he bought the tickets. But he did not opt to do that. What he did is he opted to basically disbelieve my client's affidavit and believe the three affidavits by the representative of the defendant, which we think was error and it needs to be reversed. And with instructions from the court, I do think, and if the court would like to have additional authority on this, you do have also the discretion of the authority to say, well, let the jury make that factual finding as to what was the contract. If the jury chooses to believe the defendant, then the jury would say, we don't have essentially jurisdiction. We would probably take a special interrogatory of some sort and not award my client any relief at all. I think it's very... I was going to say, I thought the court did determine the enforceability of the arbitration clause. It did not? Well, yes. The court made a factual finding. Made a factual finding that when my client had this conversation with this agent Carmen over the phone, made a factual finding that when he supposedly clicked the box, that all of the other documents that the defendant has introduced into the record, that's what my client agreed to. But if you look at A24 of the appendix, my client filed an affidavit and said, yes, there were some documents attached, but not any of the stuff that's there. He looked at their documents. When they filed their motion to dismiss, they attached a whole bunch of documents, which again have the arbitration clause in there, and he denied ever seeing them, ever reading them. The first time he ever saw them was after the lawsuit was filed and they filed their motion to dismiss. Does he claim... Does your client claim that he did not click the I agree button? He did. Well, it's incumbent upon him then to determine what the documents are, isn't it? I mean, a lot of people click the I agree without reading the documents.  And so your client doesn't dispute the fact that he clicked the I agree. He clicked it, yeah, and I think the way he said it, click the box. Click the box. Whatever. But he didn't read the documents that were underlying the I agree. He... It's unclear, and it's not in the record, but I can represent to you what I think it is, what I believe he's going to testify, which is that he did receive some documents by means of an email, but he never got any documents from the defendant after he clicked the box. But the question becomes whether he read the documents to which he agreed. Not that he received them later by email. When he clicked the I agree, the question then becomes whether, did you read the documents that were represented that you were agreeing to? The question then, yes, Your Honor, and he did read them. He only read them after the suit was filed, and his affidavit is, indicates, that he never received those documents at any time until after the suit was filed. So how could he have been... How could he have read them and agreed to them? That's the problem. I think to Justice Tate's points, and I believe that's not going to get into Mr. Kopp's argument, but I think if the argument if I read it was, there was a series of clicking the boxes or I agree that went through these steps that two or three, I can't remember off the top of my head, steps that you took or steps that your clients took to get to the final I agree and purchase that included some of these documents that are at issue, correct? Well, the only thing we'll agree to is he clicked the box. We will not agree to anything else. And he has filed an affidavit to that effect. But he can't testify to what it is he agreed to because he didn't read them at the time. He cannot testify to what he agreed to because he never received them. How can you not receive something that you're agreeing to? I see the wordsmithing here is received, but the question becomes if you're on the computer and you're going through the steps and you're clicking a box, I agree. Isn't it your burden to determine what you're agreeing to? No, I don't believe it is, Your Honor. Aren't you creating a contract when you say I agree? We have submitted what we believe, but we contend, but we're going to try and convince the jury we agree to. And that is found. My question continues to be, Mr. Dunn, how do you know what you agree to if you don't look at it? Well, you can't. But you're assuming, Your Honor, and this is what's been very frustrating to us, you're assuming that everything that Mr. Van Zandt says in his affidavit is true. Well, how can you refute it if you never looked at the documents? How can we refute it if the documents were never given to us? How can we refute it? I think the case law is pretty clear on these clickbaits and things like that, that they don't have to physically give them to you, but if they're available for your review and you don't review them, that doesn't negate the contract that's formed. Okay. Is that a truism to you or not? I think that is an accurate statement of the law. Okay. Now, let me, let me, and there were some documents that were given to him for review. Later? No, at the time. At the time. But they didn't contain the warning about visas and the arbitration clause. That is absolutely correct, Your Honor. Okay. And that certainly has been my experience when I've traveled overseas. But I think you're going to say... Certainly my experience in traveling to Africa is you've got to get your visa ahead of time. Well, as it wasn't my client's experience, because he had gone there 18 times before, or eight or nine. He'd always been in to go into Uganda and get the visa at that time, and we're prepared to approve, if permitted to do so at trial, that that would have been the circumstances at that time. But that's, I think that's a different issue. What I would like to point out, Mr. Van Zandt has filed three affidavits in this case. Now, we have no affidavit from Carmen, who was the agent that supposedly were involved. This is what all three of the affidavits start out. They're at page A19, A91, and A47. It says, my name is Peter Van Zandt. I'm authorized to act on behalf of International Travel Network, LLC. I'm an adult under no legal disability. Called upon, I can testify the facts here on my own personal knowledge, that's it. We don't know anything about this guy. No foundation's been laid as to who he is, what his expertise is, how, whether he's got any expertise as to how this software works. We have, we have no, he's laid no foundation as to whether or not the documents that they contend were given to my client on July of 2022, were in fact the ones that were enforced by this defendant at that particular point in time. This affidavit is worthless. It should never have been considered. In order to have an affidavit, it's got to meet the rules of evidence. And all he says is, well, I got personal knowledge of this. Well, there's no evidence. Did you move to take his deposition? Huh? Did you move to take his deposition? I did not, Your Honor, because what happened was, is that the order was entered. I suppose I could have moved to reconsider and take his deposition, but I certainly would like to do that. I certainly think they're, and I still think that we put into issue the fact that we did attach the documents to what it is that he contends he received. And if I could point out, Your Honor. Let me ask a question, because you filed under the Consumer Fraud Act. What fraud was there here? Of course, that's not an issue that he disposed of. But yeah, I think we allege that they knew, they knew, certainly, or it was a gross negligence in not knowing, selling airline tickets to go to Uganda and not knowing what the practices were in Uganda at the time. So, Mike, one of the problems I'm having is, why was there a duty from the ticket agent to a consumer regarding visas? What duty was there? Well, they entered into a contractual relationship. But how did that give rise to a duty for a visa? I think, I think there's a duty of implied good faith in any contract, certainly under the Consumer Fraud Act. It's not a straight negligence. It's a reduced negligence theory. We don't necessarily have to show causal connection. But he knows this guy's going to Uganda. They should know, rather than him, that Kenya Airlines is not going to let him board the plane. But you said earlier that your client had been to Uganda several times.  So he knows or should know the process of what it takes to get in to Uganda. Which had not changed. We're prepared to prove at trial that he could have gotten on that plane and he could have bought the visa at the time. The problem was with Kenya Airlines to the extent that that was the primary problem. But my point... So why didn't you bring the action against Kenya Airlines? They're the ones that didn't allow him on the plane. We could have, Your Honor. We elected not to for various reasons. But it seems to me that the ticket now allows him access to the plane. They're the ones that are interrupting his travel because he doesn't have a visa.  He says, I've been to Uganda many times. I can buy my visa at the airport. Let me on the plane. And they're the ones that are interrupting his flow of travel. Right. Not the ticket agent. Your Honor, I'm not disagreeing with what you're saying. It may very well be. If this case is remanded, they're going to win. On their motion to discuss consumer fraud, I do think we have some theories available to us that would keep it in under consumer fraud. But that's only one of the counts, Your Honor. Well, I want to say to you that publicly that the U.S. Supreme Court in the United States under Smith v. Spizzeri, S-P-I-Z-Z-I-R-R-I, says that in arbitration clauses, the remedy is not to dismiss the case, but to stay it. And I think this case got dismissed under the arbitration clause rather than stayed. Would you agree with that? I would. In fact, I did ask. I did ask on the preemption argument. I did ask for stay, but not for exactly the arbitration. Since the Federal Arbitration Act was invoked, the U.S. Supreme Court has said that where the FAA is invoked, it is a stay, not a dismissal, that should be entered if arbitration is to be enforced. That assumes, though, Your Honor, that my client was contractually bound. And I'm making no comment on that. I just wanted to mention the case because it hasn't been briefed. But there was a dismissal based on arbitration, and under the FAA, it would be a stay. And if we're forced to do it, Your Honor, what we're not going to go through the arbitration will go to small. And I understand that's contested. The arbitration is contested. Thank you, Your Honor. And I'll tell you ahead of time for a vote. Ms. Cox. May it please the Court, Counsel. I'm under a little pressure today because Mr. Dunham was my new coach in law school. And this is the first time I've had to argue against one of my former professors. So I'll do my best. Count Dunham is a count for breach of contract. They announced that we made an agreement with them to provide them with a ticket, to provide Mr. George with a ticket so he could fly to Uganda. We did that. The alleged breach, according to the plaintiff in the complaint, is that the ticket was not honored by Kenya Airways. It is undisputed the reason the plaintiff was not permitted to fly to Uganda had nothing to do with the validity of the ticket that we issued to him. There's no dispute that we provided the ticket. And he, in his own brief, says the reason he could not fly to Uganda was he didn't have a visa. Now, there's no dispute about that. That's conceded by him and admitted. But the plaintiff continues by saying, and it was repeated here today, that if the case goes to trial, he'll be able to prove that he would have been able to buy a visa once he got to Entebbe at the airport because he'd done it in the past. That has nothing to do with us. With all respect, and it's just as Kate's pointed out, this is a dispute between Mr. George and the airline. We have nothing to do with the visa except this. In his affidavit, Mr. George concedes that we sent him before the flight an email. And in the email, he concedes that we told him it is the passenger's responsibility to make sure you have all the necessary travel documents in your possession at check-in. Please verify the visa requirements for all your stops, as some of the countries may require a transit visa. And you're referencing the email sent on September 10, 2022? Correct, before he went to the airport. This is in advance. There's no dispute that he received that document warning him that it was his responsibility to get the visa. And we know the only reason he was not allowed on the plane by his own admission, he didn't have a visa. That was not our fault. He did not heed the warning and instead relied on his own mistaken belief that he could get a visa when he got to Uganda. Well, Kenya Airlines didn't agree and that was their decision. He may have been able to get a visa in Entebbe. The problem was Kenya Airlines was not going to let him on the plane. Exactly right. And that was not our fault. It was the airline's decision to not let him on the plane. He had the ticket. It was a valid ticket. If he had the visa, he could have flown. That's his own admission. Mr. Cox, I'm having trouble with the court's order.  The court's order is a dismissal under 2-619.  And presumably it's because of this arbitration clause, because that's the affirmative matter that prevents the plaintiff from going forward. No, I disagree with that. The arbitration clause was not the basis for the dismissal. The basis for the dismissal was there was a contract. The court found that form he filled out. He clicked the box. He agreed to the terms and conditions. And we fulfilled our part of the contract. There was no breach. Then why does the court give the plaintiff the choice? This is the confusing part to me. Why does the court say that the plaintiff can now either go to arbitration or file his complaint in small claims court, whichever he chooses? Well, let me bet myself, Judge. So it seems to be a dismissal without prejudice. Yeah, the case, he analyzes the contract, the lack of breach of the contract. And that was the basis for the 2-619. So when I got to it and saw that the judge had said, but if you want to go do the arbitration for a small claims case, you can. Well, then how can it be a final order? So I didn't understand that either. Because it appeared to me from his analysis of the breach of contract claim. And by the way, counts two and three, as we asserted below, are preempted by the Airline Deregulation Act. So we were just concerned with count one there. And so when I saw that, he said, if you want to go arbitrate, my thought was, why would you be able to arbitrate something that's been decided? There's no breach. There's nothing to arbitrate. There's nothing to go to small claims about. Because we would have the same arguments there we had before Judge Mitchell. Well, and I'm reading from the order now of May 29th, 2024. He says, this court's findings stop upon concluding that the terms and conditions of the website are the controlling agreement between the parties. So he doesn't make the ultimate decision. And then goes on to say, the plaintiff may choose to raise his claims under counts one, two, and three by demanding arbitration. Alternatively, pursuant to the terms and conditions of the agreement, plaintiff may refile his small claims court. How is this a final order? I'm not sure we have jurisdiction here. Well, he's dismissed the state court case saying that if you want to pursue this, you cannot do it in the state court. You have to go to arbitration or you can- Or you can file a small claims court. That's correct. Which is a state court. Those are the terms in the contract, which Mr. George agreed to by clicking the box. The terms in the contract that give them the right to do that. And they chose not to do that. And they say they're not going to do it. So if we go back to the state court, he's already determined there is a contract. These are the terms of the contract. But the bottom line is, we have not breached our agreement. We've- Well, I understand your argument. Yeah. But I thought the order on appeal was the order of May 29th, 2024. Say again, sir? The order on appeal is May 29th, 2024. Do you know? I think that's correct. And that's the order that says, here, here's your choice. I'm not going to decide the final terms. And the reason he doesn't decide the final terms is he says that there's this arbitration clause out there. True. So the plaintiff could demand arbitration, which was never done in this case.  So I'm having a hard time feeling that this order is final for jurisdiction purposes in this case. Well, I don't think it's final with respect to the state court's decision. He said, here's my decision. I'm dismissing it. This is a contract that you entered into. You made that finding. Here are the terms and conditions of that contract. Where does he say that in the order? I can't point to- I don't have the order in front of me. But he did find that it did constitute a contract that was accepted by him. He found there was a contract. But as far as the terms and conditions, that's where he says, I'm going to stop short. I can hand you a copy of the contract of the order if you'd like. Well, he does say that this is a contract. He made that finding. And he said that if you want to pursue it, you have to do this. You cannot do it in my court. That was his final decision on that issue. But he gave the plaintiff a choice. That's correct. To go to state court or to demand arbitration. So if this were a situation that you're well aware of, where the plaintiff had demanded arbitration and the court had denied and dismissed or stayed, then we would have a situation where arbitration's at issue. There's a rule on it. No problem with jurisdiction. But here, the court said, I'm stopping short. The court's finding stopped upon concluding that the terms and conditions of the website are the controlling agreement between the parties. Well, he did find that- He found there was an agreement. But he did not go so far as to find what the terms and conditions are because he was concerned about the arbitration clause. The problem here is the plaintiff had never demanded arbitration. They did not. They never challenged the arbitration clauses unconscionable? No. Did you ever demand arbitration? We raised the issue that arbitration was required. We did not demand arbitration. We asked that the stateful case be dismissed because it was not the proper place. According to the agreement, the dispute below was whether there was an agreement. We now know that he concedes that he checked the box. He agreed to it. These are the terms and conditions that are set forth in that document. And one of them was, you have to arbitrate or you can go to small claims. And those were the terms that Judge Mitchell allowed them to choose. These are your choices. They decided not to do either one. It came here. It came here. Okay. I'm sorry to interrupt. So, so there is an argument about the affidavit. I'll address that briefly. The affidavit simply says, these are the documents. This is how the process of buying a ticket works. And we really don't even need much from that because now we have the concession that he did check the box. There was a dispute about that below, but you can see from the document itself, which is authenticated by Mr. Bazan, that he did check the box. So we've now admitted that. And so the idea of throwing out this affidavit, I think, would not be proper because the affidavit says that he understands these things based on his own personal knowledge and could testify them if called as a witness. So I think they were properly considered. Counts two and three, as I said before, this really isn't briefed, but it did come out. And really, the trial court didn't really address this issue, but those counts were preempted by the Airline Deregulation Act of, I think, 1978. So. Why is that? Is it, what is it about the statute that says it's preempted? There are cases which we cited in our brief that say it was, it does preempt the Airline Consumer Fraud Act, and it also preempts any negligence actions. Okay, then the consumer fraud, but not the contract claim. No, not the contract claim. Yeah, definitely not. So unless the court has some further questions, that's all I have. Justice Bates. Thank you, sir. Thank you, Judge. Thank you. We want a 2619 motion. I don't think we have any burden. I don't think we have a burden on a 2619 motion. I think they do. And I think to the extent. Well, I'm not sure I agree with you on that.  2619 has certain affirmative matters, statute of limitations, things of that nature, that they can raise, at which point you would have to respond.  For example, 2619A9, which is, I think, the section they're going under, basically says they can raise matters by affidavit, and if we don't respond to the affidavit, we lose. Then they're taken as true. Yeah, but we did respond to their affidavit. And here's what they said. The whole controversy that you two gentlemen have been disputing is the existence of the contract and what the terms of the contract are. In an arbitration situation, the scope of the contract, the scope of what would be included would be determined by the arbitrator. Well, I suppose that's true. Can I raise in front of the arbitrator the fact that there never was any contract, and that we never agreed to the arbitration in the first place? Or is that something that the judge can say, he never agreed to the arbitration in the first place, and so I don't have to send it to the arbitrator? Well, if that's a question to me, I don't get the last three points. Well, I think my position is. I think my position is. I know the answer. The arbitrator does not have, under these facts, the jurisdiction to determine whether my client agreed to the arbitration in the first place. I think that's going to have to be made by the court. I would like to read Wyatt's affidavit. I have to go back. You don't have to do that, Mr. Dunham. Well, but it's important. He says that he has looked at all of the emails that he received on July 15, 2022, and the only one that he received has the attachments that are set forth. He absolutely denies ever receiving any of the stuff that Van Zandt insists that he received. So the question is not whether he clicked the box. The question is, what did he receive? And what he received, that's a factual issue. So what you're saying is there remains a question of fact as to whether there's a contract at all? There's obviously a contract. The question is, there's a question of fact of the terms and conditions of that contract. I'm glad you used those words because that's exactly what the court did. It says it's not going to interpret that. It's leaving that to the arbitrator or for you to file a small claims court. Based on the assumption that what Mr. Van Zandt is attaching to his affidavit was the contract, because the court did find that what Mr. Van Zandt claims was attached to the contract was in fact what my client agreed to. There is a factual issue. Can you show me that in the order? Because that's what I'm having trouble with. Because if the court found that your client agreed to the terms of the contract, then why did it say it's stopping short of terming? This is at the top of page, appendix page 138, the top paragraph. And he goes into great detail. He says, from these emails and also the portion of the transcript contained in the pleadings, then you may have to look at the transcript because my client does admit that he did click a box of some sort. The court finds that the plaintiff was required to purchase the tickets online and not pay solely or otherwise he would not have received an email requesting his credit card information for payment. He never received a credit card request. They claim he did, but as he testified, he gave them the information over the phone. That's a factual finding. Oh, I don't disagree there was a factual finding. What I'm looking for is a conclusion. Well, then he goes on when you read from that. And I'm looking at 138. I don't see that. Well, it's A138, top of the page. Yeah, I'm looking at the top of the page. He says, from these emails and also the portion of the transcript contained in the pleadings, the court finds the plaintiff was required to purchase the tickets online and not solely over the telephone. Okay, it's A138? Yes. Okay, I don't have that language. It's C175. I have C174.  Okay, I see the language now in the order. And when you read from the context of it, he has to have reached that conclusion, Your Honor, because he says at the end, you've got a choice of arbitrating or a small claims court. He has to have found that my client was bound by the arbitration clause, which he denies. No, what he found was that you have the ability to demand arbitration or go to small claims court. We deny that we had the ability to find... To demand arbitration. Yeah, because... I see the point. It was never... We have a dispute as to whether my client's affidavit, which is he's a tech, and I should point out briefly, we messed up the appendix, Your Honor, and it's A37, and it should have been 38 and 39, but we omitted those. So it would be A37, and you're going to refer to C67, C68. Those are the documents that we say we received for which there is a factual dispute. I think everybody understands. It took us a while to get there, but I think we all understand what our positions are. I should point out that Mr. Cox was one of my very best students.  Well, gentlemen, obviously we will take the matter under advisement, take the steps as I outlined earlier to get a third panel member, and then issue an order in due course.